## R. M. FUNKHOUSER & Co. v. J. B. DUTCHER et al.

When a shipper has shipped goods to his factor in the usual course of business, and has sent forward
with the shipment, or by mail, one of the bills of lading consigning the goods to him, the shipper
cannot destroy the lien and privilege that the factor and consignee will have for advances upon the
goods, by transferring other bills of lading to secure other debts.

APPEAL from the Fourth District Court of New Orleans, *Price, J.*
*Mott & Fraser,* for plaintiffs and appellants. *Singleton & Clack,* for defendants.

COLE, J. About the eleventh of December, 1855, *Shinkle,* one of the defendants, shipped from St. Louis to his factor, *Dutcher,* 2054 sacks of wheat. The bill of lading consigning the wheat to him was signed on the 11th of December, and was either sent by the steamer upon which the merchandise was shipped, or was transmitted by mail to the defendant, *Dutcher.*

At the time of the shipment, and also when the wheat was received by *Dutcher,* the shipper was indebted to *Dutcher,* the consignee, in more than the value of the proceeds of the wheat, for bills paid and accepted to be paid for the accomodation of *Shinkle,* by *Dutcher,* who was his factor.

About the 20th of December, 1855, *Shinkle* assigned one of the bills of lading to plaintiff, to secure the payment of a draft for $2,081 05, which he sold to plaintiff, and which was afterwards protested for non-acceptance and payment.

This suit is brought to compel *Dutcher* to pay plaintiff the draft, on the ground that it was specially drawn against the shipment of wheat, and that the sale of the bill of exchange, with the bill of lading annexed, specially charged the property mentioned therein with the amount of the bill.

There was judgment for *Dutcher,* (*Shinkle* was not cited) and plaintiff has appealed.

Defendant having received the wheat with a bill of lading consigning it to him, had a privilege on it for the balance due him, as the factor of the shipper. C. C. Art. 3214; Sess. Acts, 1841, p. 21.

This privilege cannot be defeated by the claim of plaintiff. At the time the bill of exchange and one of the bills of lading were delivered to plaintiff, he knew that another of the bills of lading consigning the wheat to defendant had been transmitted to the latter. If this were unknown, ordinary prudence, at least, would have made him demand all the bills of lading and a transfer thereof to him, or he should have caused *Shinkle* to have inserted in the bill of lading forwarded to the defendant, that he had drawn a certain bill against the shipment. If this had been done, the defendant would have received the consignment with notice, and he would have been obliged to have paid the bill of exchange in favor of plaintiff. *Farmers' and Merchants' Bank* v. *Franklin,* 1 An. 393.

The plaintiff could also have been protected, if *Shinkle* had taken all the bills of lading deliverable to his own order, and had then endorsed them to plaintiff, for then the bill of exchange would have been covered to the extent of the value of the shipment. *Fetter* v. *Field,* 1 An., p. 80.

If a shipper can be permitted to send one bill of lading to his merchant, in which goods are consigned to him, and subsequently transfer another to secure a

bill of exchange, there would be no end to the frauds that would be committed against factors and other persons.

In this case, there were four bills of lading.

If persons sufficiently imprudent could have been found, *Shinkle* might have transferred two of them, each for more than sufficient to cover the value of the wheat shipped. There would, then, have been three parties claiming the proceeds of the wheat—the factor, by virtue of his privilege, and the two holders of the two bills of exchange, each by reason of a transfer to him of a bill of lading to guaranty their payment.

We are of opinion, when a shipper has shipped goods to his factor in the usual course of business, and has sent forward with the shipment, or by mail, one of the bills of lading consigning the goods to him, that the shipper ought not to be permitted to destroy the lien that the consignee will have for advances, by transferring other bills of lading to secure other debts.

The reason of the apparent imprudence of plaintiff, in accepting one bill of lading as security, without protecting himself against the others, is, however, explained by the evidence.

It appears, there was an evident understanding between *Shinkle* and plaintiff, at the time the latter bought the bill of exchange, that plaintiff was not to be paid out of the proceeds of the wheat, unless there would be sufficient to satisfy first the balance due defendant, as factor of *Shinkle*.

*Shinkle* testifies that he "stated to *Funkhouser*, when he gave him the draft, that he had shipped and drawn on general account. It was understood, however, at the same time, that this shipment of 2054 sacks was included in that general account. I thought there would be enough (and so represented to *Mr. Funkhouser*) of a balance in my favor, on the shipments made by me to *Dutcher*, to pay this draft. Upon these representations, *Mr. Funkhouser* took the draft."

Judgment affirmed, with costs.